UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Kenneth H. Hart

    v.                                             Civil No. 11-cv-417-PB

John Doe et al.


**REPORT AND RECOMMENDATION**

Kenneth H. Hart, an inmate at the New Hampshire State Prison proceeding pro se, has filed a complaint in this court (doc. no. 1). The matter is before the court for preliminary review to determine, among other things, whether Hart has stated any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

Hart has also filed a number of motions requesting preliminary injunctive relief (doc. nos. 3-8, 10-12, 15, 16, 21, and 25) and a motion seeking to challenge the constitutionality of the in forma pauperis statute (doc. no. 19). Those requests have been referred to this magistrate judge by the district judge for a recommendation as to disposition (doc. no. 30). The district judge has also referred a number of nondispositive motions to this magistrate judge (doc. nos. 13, 14, 18, and 26-

28), which will be addressed in an order issued simultaneously with this report and recommendation.

## Background

The assertions in Hart's filings are, for the most part, repetitive, nonspecific, vague, and conclusory in nature. After reviewing each document presently before the court and construing Hart's pleadings generously, the court finds that Hart has alleged the following facts.

I. <u>Danger from Other Inmates</u>

Hart is an African-American inmate at the New Hampshire State Prison ("NHSP"). At the time he originally attempted to file this action, Hart was housed at the NHSP's Medium Custody South unit ("MCS"). Hart alleges that while housed on MCS, he was subjected to unspecified verbal and physical abuse and harm to his person and property by white, Hispanic, and Asian inmates who are racists that hate African-Americans. Hart also states that he has been targeted by inmates due to his status as a sex offender and a "senior" inmate, who is nonaggressive, quiet, and conforms to prison rules. Hart states that he has not told anyone at the prison about the abuse he has suffered or that he is in danger.

Hart claims that, notwithstanding any direct harm he may be exposed to as a result of being housed with racist inmates, the primary manner in which these inmates have caused him harm is by harassing, abusing, intimidating, and threatening NHSP officers who have been nice to, or have provided services and conveniences to, Hart, in order to coerce the officers to treat Hart poorly and deprive him of various rights and privileges. As a result, Hart claims that prison officers denied him a number of unspecified rights, including constitutional civil rights.[1]

Hart alleges that on MCS, inmates have access to Hart when he is sleeping, as he was not housed in a locked room.  Hart believes that inmates have been drugging him in his sleep.  Hart is concerned that his transfer out of MCS will cost him the ability to collect "blood evidence" from himself against his assailants.  If he were to lose such evidence, Hart worries that he would be unable to prove that he is being drugged.

---

[1] Hart identifies at least thirty-eight officers whom he claims have been influenced by racist inmates to violate Hart's rights.  It is not necessary to list them here.

II.  Access to the Courts

Hart states that on October 5 or 6, 2011, Sgt. St. Peters and Lt. Brown confiscated Hart's legal property.  Hart was then charged with a disciplinary violation for possessing excessive legal paperwork, refusing to obey an order to decrease the amount of legal paperwork in his possession, and lying.  Hart alleges that his legal paperwork was taken from him before he could organize it and decide how to reduce it.[2]

After a disciplinary hearing held on October 20, 2011, Hearing Officer Hickman found Hart guilty and imposed sanctions, including, segregation in SHU, loss of canteen, loss of recreation, and extra duty hours.  Hart alleges that the loss of canteen privileges prevents him from buying coffee, which leaves him more vulnerable than usual to nighttime assaults on his body while he sleeps.  Hart asserts that the disciplinary action and sanctions were the result of pressure placed on prison employees by racist inmates.

Hart states that NHSP law librarian Becky Harding is among the NHSP employees influenced by racist inmates to treat Hart

---

[2]Hart indicates that his legal paperwork was returned to him on November 7, 2011, and seized again on November 17, 2011.  The current status of Hart's legal paperwork makes no difference in the court's recommendation with respect to the disposition of Hart's action.

poorly. Hart states that as a result of that influence, Harding issued a special directive prohibiting Hart from receiving any "loan books" for a year while he was litigating in federal court. Hart was apparently allowed to borrow some books, because he claims that Harding directed that Hart could only borrow four books at a time while white inmates were allowed to borrow six books at a time.

III. Conditions of Confinement

Hart alleges that a number of prison conditions have violated his rights, including: (1) tainted water on his pod; (2) denial of untainted water from the security officers' bathroom; (3) the cancellation of a class he had registered for; and (4) the denial of dinner on October 4, 2011, when Hart was too late for dinner, due to racist inmates pressuring officers to make Hart eat last because he is African-American. Hart also asserts generally that he was subjected to institutional and individual racial discrimination at the NHSP and that unspecified deficiencies exist in the prison's provision of medical care. Hart has not provided facts concerning these conditions or any harm he has suffered as a result of exposure to the conditions.

## Discussion[3]

I. Preliminary Review

   A. Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge conducts a preliminary review. The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6). The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a

---

[3] The claims as identified herein will be considered to be the claims raised in the complaint for all purposes. If Hart disagrees with the claims as identified, he must do so by properly objecting to this report and recommendation or moving to amend his complaint.

claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to

relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003). Because of Hart's pro se status, this court has considered the factual assertions in each of the documents before the court to determine whether Hart has, in any

of his filings, stated any claim in this action upon which relief might be granted.

    B.    <u>Claims Asserted Against Inmates</u>

Hart has labeled the inmates he alleges have harmed him as "John Doe" defendants in this action. A plaintiff claiming an infringement of his civil rights by individuals must establish that (i) the defendants deprived plaintiff of a right secured by the Constitution or laws of the United States; and (ii) the defendants acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia." 42 U.S.C. § 1983; <u>see</u> <u>Haywood v. Drown</u>, 556 U.S. 729, ___, 129 S. Ct. 2108, 2111 & n.1 (2009); <u>Harron v. Town of Franklin</u>, 660 F.3d 531, 535 (1st Cir. 2011). In relation to the second requirement, a private actor can be held to be a state actor only under limited circumstances, none of which are present here. <u>See</u> <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982); <u>Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Sagardía De Jesús</u>, 634 F.3d 3, 10 (1st Cir.) (describing circumstances under which private defendants can be treated as state actors for purposes of § 1983), <u>cert. denied</u> 132 S. Ct. 549 (2011). Because the prison inmates sued in this action are private individuals, and not state actors, no federal civil

9

rights claim arises against them in this § 1983 action. Accordingly, all of the civil rights claims asserted against the John Doe inmates should be dismissed.

    C.    <u>Endangerment</u>

Hart alleges that he has been endangered by prison officials who have failed to protect him from inmates who are drugging him in his sleep. The Constitution requires prison officials to take "reasonable measures to guarantee the safety of the inmates, including protecting prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994). To establish an endangerment claim, an inmate must assert facts to demonstrate that, objectively, he is incarcerated "under conditions posing a substantial risk of serious harm," and that the involved prison officials knew of and disregarded an excessive risk to the inmate's safety. <u>Id.</u> at 834. An inmate does not have to wait to be attacked to assert a constitutional claim of endangerment; he can base a claim on an allegation that he has been subjected to possible future harm, but to do so he must also show that he has been subjected to a risk of "'sufficiently <u>imminent</u> danger[]'" that is "'<u>sure or very likely</u>'" to cause harm. <u>Baze v. Rees</u>, 553 U.S. 35, 50 (2008) (emphasis in original) (quoting <u>Helling v.</u>

McKinney, 509 U.S. 25, 33-34 (1993)).  To prevail, such a claim must present an "'objectively intolerable risk of harm.'"  Baze, 553 U.S. at 50 (quoting Farmer, 511 U.S. at 846).

Hart states in his pleadings that the officers are unaware of the danger posed to him by other inmates, as Hart has not advised anyone at the prison of the danger.  Further, Hart concedes that he does not know, but merely suspects, that he is being drugged in his sleep.  Where a prison official is unaware of a risk, he cannot be deliberately indifferent to that risk.  Accordingly, Hart has failed to assert any claim for endangerment against any officer at the NHSP, and those claims should be dismissed.

    D.   Disciplinary Proceedings

Hart alleges that the disciplinary proceedings regarding his legal paperwork and the sanctions that resulted therefrom, were arbitrary and violated his due process rights.  "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed."  Sandin v. Conner, 515 U.S. 472, 480 (1995) (internal quotation and citations omitted).  While a state may under certain circumstances create liberty interests implicating the Due Process Clause:

11

> these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 484 (citing Bd. of Pardons v. Allen, 482 U.S. 369 (1987)). "Discipline by prison officials in response to . . . misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485.

Hart's claim that as a result of disciplinary charges, he was subject to segregation in SHU, loss of canteen and recreation privileges, and extra duty, does not describe sanctions so severe as to constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life." See id. at 484 (thirty days in punitive segregation did not implicate liberty interest sufficient to invoke due process protections); see also DeRoo v. Holinka, 438 F. App'x 520, 521 (7th Cir. 2011) (no liberty interest in commissary privileges); Fiore v. Holt, 435 F. App'x 63, 68 (3d Cir. 2011) (thirty day loss of commissary privileges does not violate due process); Ballard v. Pierce, 401 F. App'x 993, 994 (5th Cir. 2010) (loss of telephone, visitation, and commissary privileges does not implicate due process); Odneal v. Hinojosa,

12

357 F. App'x 598, 599 (5th Cir. 2009) ("punishments such as loss of recreation and commissary privileges [and] cell restriction . . . do not implicate due process concerns"). Accordingly, Hart has failed to state a due process claim with respect to the disciplinary action or sanctions described in the complaint, and any such claim intended by Hart should be dismissed.

    E.    Legal Paperwork and Books

Hart asserts that he was denied his legal paperwork by Brown and St. Peters, and denied access to books from the law library by Harding, which hindered his ability to pursue or defend various legal actions, including the instant action. "[P]risoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977), overruled in part on other grounds by Lewis v. Casey, 518 U.S. 351, 354 (1996). To provide adequate access, prison officials must "'assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000) (quoting Bounds, 430 U.S. at 828). To state a claim that he has been denied such access, an inmate must allege more than a lack of legal research materials or assistance, but must also assert

facts that "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351. To demonstrate such a hindrance, the inmate must show "that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented." Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 WL 205290, *1 (1st Cir. Apr. 25, 1997) (unpublished table decision) (citing Lewis, 518 U.S. at 356).

While Hart states that he has been unable to engage in litigation due to the deprivation of his legal paperwork and other legal resources, he has not identified any specific detriment to any pending litigation, or actionable claim that was actually caused by the deprivations alleged. Hart has thus failed to state a claim upon which relief might be granted for an alleged violation of his right of access to the courts.

### F. Equal Protection

Hart alleges that white inmates may borrow more books than he and that he was placed at the back of a chow line and missed a meal because he is African-American. In addition to his allegation that inmates caused him to be discriminated against because of his race, Hart states that certain officers at the prison were racist and subjected him to discrimination.

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law." U.S. Const. Amend. XIV. This provision requires states to treat similarly situated people in a similar manner. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Generally, to establish an equal protection claim, a plaintiff must demonstrate that, (1) compared with others similarly situated, he was selectively treated, and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion. See Hernandez v. New York, 500 U.S. 352, 360 (1991).

Here, Hart baldly asserts that the limit on borrowing books and the requirement that he stand at the back of the chow line were motivated by racial discrimination on the part of inmates and/or NHSP employees. Hart provides no factual basis to support his conclusory claims of discriminatory intent except his assertion that white inmates were allowed to borrow two more books than Hart. That assertion alone fails to establish a prima facie case of racial discrimination, as Hart has failed to show that he and the white inmates are similarly situated with respect to book access. Hart's allegations are insufficient to

state a plausible claim that he has a right to relief "above the speculative level." See Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1949 (pleading offering only conclusions "will not do"). Accordingly, Hart's equal protection claims should be dismissed.

    G.    Conditions of Confinement

As listed above, Hart asserts several general deficiencies in the conditions of his confinement at the NHSP. In reviewing a complaint, "naked assertions devoid of further factual enhancement need not be accepted." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (internal quotation marks omitted) (quoting Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Iqbal, 129 S. Ct. at 1949). The prison condition claims described here are conclusory, and Hart has failed to assert sufficient facts to support the claims. Accordingly, Hart's prison conditions claims should be dismissed as insufficiently stated.

II. Motions for Preliminary Injunctive Relief

Hart has made numerous claims for preliminary injunctive relief in his pleadings (doc. nos. 3, 4-8, 10-12, 15, 16, 21, and 25). Included in those requests are, among other things, requests that the court order the prison: (1) to house Hart in a particular unit and not transfer or reclassify him; (2) to conduct an investigation into alleged drugging of Hart; (3) to take Hart's blood so that it can be analyzed to prove Hart's drugging charges; (4) to stay disciplinary sanctions imposed at the prison and provide Hart with his legal paperwork; and (5) to require prison officials to identify racist inmates and to obtain treatment for those inmates.

To obtain preliminary injunctive relief, a plaintiff must demonstrate: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quotation marks and citations omitted). Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful

resolution of the dispute after full adjudication of the underlying action. See Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007). "'The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

As discussed in this report and recommendation, Hart has failed to state any claim upon which relief might be granted. As a result, he is unable to demonstrate that he is likely to succeed on any of the claims in his complaint. Hart cannot, therefore, assert a viable claim for preliminary injunctive relief in this matter. Accordingly, all of Hart's motions seeking injunctive relief (doc. nos. 3-8, 10-12, 15, 16, 21, and 25) should be denied.

III. Constitutional Challenge to 28 U.S.C. § 1915(b) (doc. 19)

Hart has filed a motion (doc. no. 19), challenging the constitutionality of 28 U.S.C. § 1915(b), the statute outlining the filing fee requirements of the Prison Litigation Reform Act ("PLRA"). Section 1915(b) requires prisoners proceeding in

forma pauperis to pay for the entire filing fee for their civil rights cases and establishes the manner in which the fee is to be collected.  A number of circuits have already considered the constitutionality of § 1915(b).  The courts in those circuits "have uniformly concluded that the PLRA fee filing requirements pass constitutional muster."  Taylor v. Delatoore, 281 F.3d 844, 848 (9th Cir. 2002) (collecting cases and agreeing with other circuits that have ruled that § 1915(b) does not violate the right of access to the courts, equal protection, double jeopardy, or the First Amendment).  This court is persuaded by the reasoning of those circuit courts that have addressed this issue.  Accordingly, the court finds that Hart's motion (doc. no. 19) challenging the constitutionality of § 1915(b) should be denied.

## Conclusion

For the foregoing reasons, the court should enter findings consistent with this report and recommendation and dismiss Hart's complaint (doc. no. 1), deny the pending motions for injunctive relief (doc. nos. 3-8, 10-12, 15, 16, 21, and 25),

and deny the motion challenging the constitutionality of the in forma pauperis statute (doc. no. 19).

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 268 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

February 24, 2012

cc: Kenneth H. Hart, pro se

LBM:jba